IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

TINA B.,[1]
     Plaintiff,

          v.                           Civil No. 3:21-cv-000348 (REP)

KILOLO KIJAKAZI,
Acting Commissioner of Social Security
     Defendant.

## REPORT AND RECOMMENDATION

This is an action seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying the application of Tina B. ("Plaintiff") for supplemental security income under the Social Security Act (the "Act"). Plaintiff was fifty-one years old at the time of her application and previously worked as a substitute teacher. (R. at 79, 196, 182.) Plaintiff alleges she is unable to work due to major depressive disorder. (R. at 205.)

On January 13, 2021, an Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (R. at 12.) This matter comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross motions for summary judgment, rendering the matter ripe for review.[2]

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and financial account numbers from this Report and Recommendation, and will further restrict its discussion of Plaintiff's medical information only to the extent necessary to properly analyze the case.

Plaintiff now seeks review of the ALJ's decision, arguing that the ALJ failed to consider the medical opinion evidence of Nurse Practitioner Anthony Santalucia ("Nurse Santalucia") in accordance with 20 C.F.R. § 416.920c. (Pl.'s Br. Supp. Mot. Summ. J. 6, ECF No. 24 ("Pl.'s Mem.").)[3] For the reasons set forth below, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 23) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 25) be GRANTED and the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for supplemental security income on October 24, 2019, alleging disability beginning October 3, 2019. (R. at 182.) The Social Security Administration ("SSA") denied Plaintiff's claims on January 9, 2020 and again upon reconsideration on July 25, 2020. (R. at 78, 91, 106.) Plaintiff requested a hearing before an ALJ, and a hearing was held on November 17, 2020. (R. at 30-56, 124.) On January 13, 2021, the ALJ issued a written opinion, holding that Plaintiff was not disabled under the Act. (R. at 15-29.) Plaintiff requested review of the ALJ's decision. On April 1, 2021, the SSA Appeals Council denied it and rendered the ALJ's decision as the final decision of the Commissioner. (R. at 1-3.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c).[4]

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual

---

[3] On January 10, 2022, Plaintiff filed a Notice of Withdrawal of Issue (ECF No. 27) and withdrew her second argument regarding the constitutionality of the ALJ's decision-making authority. *See* Pl.'s Br. Supp. Mot. Summ. J. 9-13, ECF No. 24. Accordingly, the Court will not address that issue in this Report and Recommendation.

[4] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for supplemental security income.

findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)).

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).

In considering the decision of the Commissioner based on the record as a whole, the court must take into account "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 476. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 404.1520(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. § 404.1520(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. § 404.1520(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). Between steps three and four, the ALJ must determine the claimant's residual functional capacity, accounting for the most the claimant can do despite her physical and mental limitations. § 404.1545(a).

At step four, the ALJ assesses whether the claimant can perform her past work given her residual functional capacity. § 404.1520(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, such that she must prove that her limitations preclude her from past relevant work. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock*, 2012 U.S. App. LEXIS 128, at *3 (citation omitted). If such work can be performed, then benefits will not be awarded, and the analysis ends at step four. §§ 416.920(e), 404.1520(e). However, if the claimant cannot perform her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant is capable of performing other work that is available in the national economy. § 404.1520(a)(4)(v).

## III. THE ALJ'S DECISION

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 17-25.) *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 3, 2019, the date of her application. (R. at 18.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: (1) obesity; (2) depression; (3) anxiety; and (4) post-traumatic stress disorder ("PTSD"). (R. at 18.) At step three, the ALJ determined that none of these impairments, individually or in combination, met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). (R. at 18-20.)

The ALJ then determined Plaintiff's residual functional capacity. (R. at 20.) Based on the evidence in the record, the ALJ determined that Plaintiff retained the ability to perform a full range of work at all exertional levels with the following non-exertional restrictions:

> [Plaintiff] is able to frequently climb, stoop, kneel, crouch, or crawl; she is able to understand, remember, and carry out simple, routine tasks consistent with unskilled work, she can concentrate, persist, and maintain pace sufficiently to complete unskilled tasks that do not require a production rate pace, meaning a fast pace; she can have occasional contact with coworkers and supervisors, can have no contact with the public, and must work in a setting were tasks involve work primarily with objects rather than people; and she is able to adapt to occasional changes associated with unskilled work.

(R. at 20.)

The ALJ explained that she determined Plaintiff's residual functional capacity after considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," including the medical opinions and prior administrative medical findings, in accordance with the regulations. (R. at 20.)  Based

5

on her residual functional capacity findings, the ALJ concluded at step four that Plaintiff is unable to perform any past relevant work as actually or generally performed. (R. at 23.) At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 24.) In making her findings, the ALJ considered the testimony of a vocational expert, who opined that Plaintiff could perform the requirements of representative occupations such as kitchen helper, router, and mail clerk. (R. at 24-25.) Therefore, the ALJ determined that Plaintiff is not disabled under the Act. (R. at 25.)

## IV. ANALYSIS

Plaintiff requests that this Court recommend remand on the issue of whether the ALJ properly evaluated the medical opinion evidence of Nurse Santalucia. (Pl.'s Mem. at 6-8.) Plaintiff alleges that the ALJ failed to give a sufficient explanation for her assessment of Nurse Santalucia's opinions, which the ALJ found to be partially persuasive. (Pl.'s Mem. at 6-8.) According to Plaintiff, the ALJ's "conclusory rationale does not allow a subsequent reviewer to understand exactly why the ALJ was rejecting certain opinions, and the ALJ failed to comply with 20 C.F.R. § 404.1520c as the ALJ failed to properly consider the mandatory factors when evaluating Nurse Santalucia's opinions." (Pl.'s Mem. at 6-8.)

Defendant responds that the ALJ "correctly evaluated the medical opinion evidence as part of her [residual functional capacity] assessment and pointed to substantial evidence in the record to support her findings." ((Def.'s Mot. Summ. J., 8 (ECF No. 25) ("Def.'s Mem.").) In support, Defendant argues that the ALJ sufficiently explained how she considered the supportability and consistency factors set forth in the regulations when evaluating Nurse Santalucia's opinion. (Def.'s Mem. at 10-11.) For the reasons that follow, this Court finds that the ALJ did not err, and substantial evidence supports the ALJ's decision to find Plaintiff not disabled under the Act.

**A. Substantial Evidence Supports the ALJ's Evaluation of Nurse Santalucia's Medical Opinion.**

　　*1. Evaluating Medical Opinion Evidence for Claims Filed on or After March 27, 2017.*

As an initial matter, for claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. The new regulations provide that the ALJ will no longer "give any specific evidentiary weight...to any medical opinion(s) . . . ." *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. §§ 404.1520c(a), (b), 416.920c(a), (b).

Under the regulations,[5] the ALJ must evaluate each medical opinion and articulate the "persuasiveness" of all medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict the medical opinion[,]" including familiarity with the other evidence or understanding of disability program policies and requirements. *Id*. §§ 404.1520c, 416.920c(a), (b), (c)(1)– (5). Supportability and consistency are the "most important" factors, and the ALJ must discuss how these factors were considered in the written opinion. *Id*. §§ 404.1520c(b)(2), 416.920c(b)(2). Supportability and consistency are explained in the regulations:

> (1) *Supportability*. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative

---

[5] Because Plaintiff filed her disability claim after March 27, 2017, Section 416.920c, which sets forth revised rules regarding the assessment of medical opinion evidence, applies here.

medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) *Consistency*. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). The ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

## 2. *Plaintiff's Treatment with Nurse Santalucia.*

Nurse Santalucia, a board-certified psychiatric mental health nurse practitioner, provided Plaintiff treatment through routine medication management since approximately January 2017. (R. at 651.) On examination, Plaintiff generally presented as cooperative and exhibited normal focus and attention, behaved cooperatively, and had intact judgment, insight, and memory. (R. at 340.)

In a progress note from August 21, 2019, Plaintiff told Nurse Santalucia that she "want[ed] to go to sleep and not wake up," although she denied having a plan to harm or kill herself. (R. at 349.) Instead, she affirmed that she will not hurt herself, and that she can "verbally contract for safety." (R. at 349.) She reported having a new friend who helps her get up in the morning, take showers, and get dressed. (R. at 349.) She continued to describe feeling drowsy and having sleep apnea but reported medication compliance. (R. at 349.)

Notably, Plaintiff was admitted to an inpatient psychiatric facility for eight days following an intentional overdose of sleeping medication on September 20, 2019. (R. at 355.) She was

8

discharged on October 2, 2019 and attended an appointment with Nurse Santalucia the following day. (R. at 345, 355.) She reported that she no longer had suicidal or self-harm ideations or safety issues but endorsed feelings of hopelessness and helplessness. (R. at 345.) She described feeling stressed as a result of caring for her father, who suffered from dementia. (R. at 345.) The following month, Plaintiff reported "Doing a little better than the last time," and that her "overall mood has been more stable." (R. at 647.) She complained of "having the jitters more frequently" and "upper extremity tremors" as well as a "tremoring bottom lip." (R. at 647.) She noted that this sensation occurs when she is not compliant with her medication regimen, although she continued to take more than her prescribed dosage of sleep medicine, resulting in "consistently sleeping 8 hours or more per night." (R. at 647.) She denied having suicidal or self-harm ideation and reported "her depression has been well-controlled." (R. at 647.)

On January 7, 2020, Plaintiff was noted to be withdrawn and staying in bed almost every day. (R. at 641.) She explained that her boyfriend was recently shot and killed, and she had been grieving. (R. at 641.) She reported that she did not sleep or eat and felt hopeless and constantly worried. (R. at 641.) Nurse Santalucia observed Plaintiff to be guarded, having poor eye contact, and in a depressed and anxious mood. (R. at 642.) He also noted that she had a blunted affect and poor memory. (R. at 642.) By March 2020, Nurse Santalucia's mental status examination documented Plaintiff as poorly dressed, irritable, depressed, and feeling worthless and hopeless. (R. at 625.) He also noted that Plaintiff was alert and oriented, with fair memory, insight, and judgment. (R. at 625.)

### 3. Nurse Santalucia's Opinion.

On March 17, 2020, Nurse Santalucia completed a medical assessment in which he provided his medical opinion about Plaintiff's ability to do work-related activities. (R. at 651-56.)

The form asked the nurse to assess Plaintiff's mental abilities and aptitude needed to do certain levels of work. (R. at 651-56.) The limitations are categorized as none/mild, moderate, marked, or extreme. (R. at 651.) A "marked" limitation in the functioning area is one that is "seriously limited" on an "independent, appropriate, effective, and [] sustained basis." (R. at 651.) "Moderate" functioning means that such limitation is "fair." (R. at 651.) "None/Mild" means that there is no limitation in the associated area of functioning. (R. at 651.) Nurse Santalucia's answers indicated that Plaintiff had mostly moderate limitations, one marked limitation, and four areas in which she was not limited. (R. at 651-52.)

Specifically, Nurse Santalucia assessed Plaintiff with a marked limitation in her ability to deal with work stresses. (R. at 651-52.) He found that she was not limited in her abilities to: (1) follow work rules; (2) function independently; (3) maintain her personal appearance; and (4) understand, remember, and carry out simple job instructions. (R at 651-52.) However, he found that she was moderately limited in her abilities to: (1) relate to co-workers; (2) deal with the public; (3) use her judgment; (4) interact with supervisors; (5) maintain attention or concentration; and (6) understand, remember, and carry out both detailed and complex job instructions. (R. at 651-52.) Nurse Santalucia also assessed Plaintiff with a marked limitation with her ability to deal with work stresses. (R. at 651.) He did not find that she had any extreme limitations. (R. at 651-52.)

When asked to state and explain other work-related activities which are affected by Plaintiff's mental health impairments, Nurse Santalucia added that Plaintiff has "[s]ome difficulties with emotional regulation" which presumably occurred "during periods of depressive episodes . . . ." (R. at 652.) Subsequently, he concluded that Plaintiff "[r]equires more frequent breaks to help reduce stress level." (R. at 652.) Nurse Santalucia declined to provide the medical or clinical findings that support his assessments regarding, for example, Plaintiff's intellectual

ability, thought organization, memory, or comprehension. (R. at 652.) Finally, Nurse Santalucia opined that Plaintiff could manage her benefits in her own interest, and that her impairment and associated treatment would cause her to be absent from work about once a month. (R. at 653.)

In addition to the form assessing Plaintiff's ability to do work-related activities, Nurse Santalucia completed a "Medical Source Statement" assessing Plaintiff's mental status. (R. at 654-656.) Nurse Santalucia indicated that his evaluation accounted for the period beginning June 8, 2017. (R. at 654.) He noted Plaintiff's last appointment with him was on March 4, 2020, and that Plaintiff treated "[e]very 6-weeks to 2 months." (R. at 654.) In his responses, Nurse Santalucia noted that Plaintiff's depressive syndrome was characterized by anhedonia, sleep disturbance, decreased energy, and feelings of guilt or worthlessness. (R. at 654.) He declined to find the following symptoms associated with Plaintiff's depression: appetite disturbance with change in weight, psychomotor agitation or retardation, difficulty concentrating or thinking, thoughts of suicide, and hallucinations, delusions, or paranoid thinking. (R. at 654.)

Nurse Santalucia then evaluated Plaintiff's anxiety related disorders, noting that she had trouble concentrating and was experiencing irritability. (R. at 655.) He denied that the following were present due to her anxiety: motor tension; autonomic hyperactivity/restlessness, and easily fatigued/sleep disturbance. (R. at 655.) Additionally, he denied that she had recurrent panic attacks caused by intense apprehension or fear at least once a week, nor that Plaintiff had marked distress as a result of recurrent obsessions. (R. at 655.)

Finally, Nurse Santalucia opined that Plaintiff had difficulties in maintaining interactions with others, "[d]eficiences of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner," and "recurrent instances of inability to attend work" as a result of her depression and anxiety. (R. at 656.) He denied that she had difficulties with understanding,

remembering, or applying information, and noted that she does not have episodes of deterioration in work-like settings which cause her to withdraw. (R. at 656.)  He opined that Plaintiff would be absent about once a month due to her mental health impairments. (R. at 656.)

       4.   *Analysis of the ALJ's Findings.*

In her decision, the ALJ concluded that:

> Nurse Santalucia's findings [are] partially persuasive, as they are generally consistent with the record evidence and Dr. Oritt and Dr. Bockner's findings, and supported by the clinical findings of ongoing mental impairment symptoms, but not fully consistent with the claimant's conservative treatment history, the lack of acute ongoing findings, and the claimant's physical and mental capacities despite her impairments, and are therefore not persuasive as to the claimant's ability to deal with work stress or maintain attendance.

(R. at 23.)

Although she concedes the ALJ adequately explained the consistency of Nurse Santalucia's opinions with the record, Plaintiff contends that the ALJ erroneously failed to address the  supportability factor under Sections 404.1520c and 416.920c. (Pl.'s Mem. at 6-8.) Plaintiff avers that in declining to "provide any specific references to the record" supporting the ALJ's position that Plaintiff's treatment was conservative or that the record contained inconsistent medical findings, the ALJ's resultant "cursory rationale does not allow a subsequent reviewer to understand or trace the path of the ALJ's reasoning." (Pl.'s Mem. at 8.) In her reply brief, Plaintiff adds that the ALJ's explanation regarding Plaintiff's conservative treatment history, lack of acute ongoing findings, and her physical and mental capacities despite her impairments address only the consistency factor, and do not satisfy the ALJ's duty to address the supportability of Nurse Santalucia's opinions among other evidence in the record. (Pl.'s Reply to Def.'s Mot. Summ. J. 2 (ECF No. 26) ("Pl.'s Reply").)

It is clear from the plain language in the ALJ's decision that she explicitly articulated the supportability of Nurse Santalucia's opinions; specifically noting that they are "supported by the clinical findings of ongoing mental impairment symptoms." (R. at 23.) Moreover, the ALJ noted that "the lack of acute ongoing findings, and the claimant's physical and mental capacities despite her impairments" led her to discredit Nurse Santalucia's opinion regarding Plaintiff's ability to deal with work stress or maintain attendance. (R. at 23.) Plaintiff argues that this explanation "does not address the supportability factor. If anything, it would address the consistency factor." (Pl.'s Reply at 2.)

Contrary to what Plaintiff asserts, the ALJ properly considered the supportability of Nurse Santalucia's opinion. To assess supportability, the ALJ must consider whether a medical source considered relevant "objective medical evidence and [presented] supporting explanations." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1). The fact that the ALJ does not specifically use the term "supportability" bears no relevance to this analysis, as the regulations do not require the ALJ to use any "particular language or adhere to any particular format" in her decision. *Woodson v. Berryhill*, 2018 U.S. Dist. LEXIS 167396, 2018 WL 4659449, at *6 (E.D.Va. Aug. 7, 2018), *report and recommendation adopted*, 2018 U.S.Dist. LEXIS 166820, 2018 WL 4658681 (E.D. Va. Sept. 27, 2018). Rather, the ALJ must simply comply with a "reasonable articulation standard" that enables a "reviewing court to trace the path of an adjudicator's reasoning, and will not impede a reviewer's ability to review a determination or decision, or a court's ability to review [the ALJ's] final decision." 82 Fed. Reg. 5844-01 at 5858. Thus, even under the new regulatory scheme for claims filed after March 27, 2017, the ALJ need not necessarily use the words "supportability" or "consistency," as long as the ALJ still performs the requisite analysis of these factors. Accordingly, the requisite analysis under the new regulatory scheme hinges on the ALJ's articulation of a

source's persuasiveness, which she determines according to various factors, the most significant of which are the source's consistency and supportability.

In her opinion, the ALJ summarized and evaluated the medical and other evidence. (R. at 19-23.) The ALJ accounted for this evidence in her residual functional capacity and determined that, despite the limitations opined by Nurse Santalucia, Plaintiff could work without taking additional breaks, remain on task throughout the workday, and attend work without frequent absenteeism. (R. at 20.) In light of Nurse Santalucia's opinions and throughout her decision, the ALJ cited examples of the lack of support for the nurse's assessed limitations. In particular, the ALJ drew attention to objective evidence that demonstrated that Plaintiff did not show significant deficits in her memory, attention, or concentration during medical examinations, nor did the record "show any mention of distractibility." (R. at 19, 21-22.) She also noted that "there is little indication of significant symptoms during examinations of the claimant . . . and the claimant's treatment consists primarily of routine visits for medication management, with no indication of exacerbation or emergency treatment aside from her two 2019 admissions." (R. at 22.) The ALJ added that "the claimant's concerns during these treatment visits relate to life stressors rather than symptoms of her conditions," noting that Plaintiff acknowledged being "very happy" with her medications and not wanting to change them. (R. at 22.)

Indeed, Nurse Santalucia's own treatment notes from May 7, 2020 indicate that Plaintiff had been "doing very well lately and ha[d] been void of any depressive or anxiety symptoms." (R. at 607.) She was "very happy with all of [her] medications" at that time and did not want to change them. (R. at 608.) On examination, she presented with an appropriate appearance and affect, was alert and oriented to person, place, time, and situation, and had fair insight and judgment. (R. at 609.)  At her July 14, 2020 appointment, Plaintiff reported recent and significant life stressors

14

resulting in financial and emotional stress. (R. at 599-602.) However, Plaintiff continued to manage her depressive and anxiety symptoms with medication. (R. at 599-602.) Nurse Santalucia observed Plaintiff to have appropriate affect with fair insight and judgment, good memory, and no signs of suicidal ideation. (R. at 598.)

In accordance with the regulations, the ALJ reviewed the medical evidence to ascertain the extent to which Nurse Santalucia's opinions were supported by and consistent with his own medical findings as well as the other medical evidence. The ALJ could properly discredit Nurse Santalucia's opinions for lack of support if his own treatment notes do not support his findings. *See Stanley v. Astrue*, No. 2:06cv61, 2007 WL 4224734, at *7 (W.D. Va. Nov. 28, 2007) ("[B]ecause Dr. Spangler's opinion was not supported by his own findings, the ALJ correctly afforded it less weight." ); *Mary R. v. Saul*, No. 3:19cv903, 2021 WL 388463, at *6 (E.D. Va. Jan. 19, 2021) (finding that an ALJ adequately addressed the supportability factor when the ALJ found that a medical provider's opinion "was less supported because [the provider] found extreme limitations even though he observed [the plaintiff] to be cooperative with good eye contact").

Next, the ALJ considered the medical opinions of Eric Oritt, Ph.D. ("Dr. Oritt") and Andrew Bockner, M.D. ("Dr. Bockner").  (R. at 22-23.) The ALJ noted that Dr. Oritt and Dr. Bockner both found Plaintiff able to: (1) complete a normal workday and workweek without interruptions; (2) perform at a consistent pace without an unreasonable number and length of rest periods; and (3) respond appropriately to changes in the work setting. (R. at 22-23.) Further, the ALJ noted Plaintiff's "physical and mental capacities despite her impairments," such as Plaintiff's ability to care for her sick parents, help to arrange their funerals, and serve as primary caretaker of her young daughter, who she helped with virtual schooling and homework. (R. at 42-44.)

After considering the medical and other evidence, the ALJ concluded that the record did not support Nurse Santalucia's findings as to Plaintiff's ability to deal with work stress or maintain attendance. (R. at 23.) As discussed, substantial evidence supports the ALJ's decision to partially discredit Nurse Santalucia's opinions. The regulations require that the ALJ explain how she considered the consistency and supportability of the medical opinion and why—based on the evidence—the ALJ reached the particular conclusion she did as to the persuasiveness of the opinion. *See* 20 C.F.R. § 404.1520c(a)—(b). The ALJ satisfied that standard here. For these reasons, the Court finds that the ALJ properly addressed the supportability factor and substantial evidence supports her findings.

## V. CONCLUSION

For the reasons set forth above, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 23) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 25) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to Senior United States District Judge Robert E. Payne and to all counsel of record.

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.

/s/ MRC
Mark R. Colombell
United States Magistrate Judge

Richmond, Virginia
Date: May 6, 2022

17